IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MUNEERAH MAALIK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 8384 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CAROLYN W. COLVIN, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Muneerah Maalik seeks reversal, or in the alternative, a remand of a final decision of the defendant Commissioner of Social Security ("Commissioner"), who found that plaintiff was not entitled to supplemental security income ("SSI") and social security disability insurance ("SSDI"). Plaintiff filed the instant motion for summary judgment. For the reasons discussed below, the court grants plaintiff's motion for summary judgment, and remands this case to the Administrative Law Judge ("ALJ").

## PROCEDURAL HISTORY

Plaintiff applied for SSI and SSDI in October 2009, alleging that she had been disabled since June 4, 2009, due to the residual effects of a stroke. Her application was denied initially and on reconsideration, prompting her to request a hearing before an ALJ. On June 21, 2011, ALJ Marlene Abrams held a hearing at which plaintiff testified, along with a medical expert and vocational expert.

The ALJ issued an opinion on September 21, 2012, denying plaintiff's application. The ALJ determined that while plaintiff could not perform her past work, she was not entitled to disability benefits because she could perform sedentary work, including as an address clerk,

account clerk, or quotation clerk. The Appeals Council upheld the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security.

## DISCUSSION

### I. Legal Standards

This court must uphold the final decision of the Commissioner so long as her factual findings are supported by substantial evidence and no error of law occurred. Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Diaz v. Carter, 55 F.3d 300, 305 (7th Cir. 1995) (internal quotations and citations omitted), and a "mere scintilla" of evidence is not enough. Id. "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The court does not substitute its own judgment for the Commissioner's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence or deciding questions of credibility." Williams v. Apfel, 179 F.3d 1066, 1072 (7th Cir. 1999).

### II. Analysis

In determining whether an individual is disabled for purposes of receiving SSI, the ALJ must follow a five-step sequential process. See, e.g., Moore v. Colvin, 743 F.3d 1118, 1121 (7th Cir. 2014); 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. Moore, 743 at 1121. The ALJ here found

that plaintiff was not so engaged, "and therefore the analysis proceeded to the second step, which is a consideration of whether the claimant has a medically determinable impairment, or combination of impairments, that is 'severe.'" Id. The ALJ determined at this step that plaintiff suffers from the following severe impairments: status post middle cerebral artery stroke causing asphasia and initial right hemiparesis; mild asphasia; cognitive disorder, not otherwise specified, and adjustment disorder, not otherwise specified. At step three, the ALJ determined that these severe impairments did not meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to steps four and five, the ALJ considered plaintiff's residual functional capacity ("RFC"), which is "an assessment of what work-related activities [plaintiff] can perform despite her limitations." Young v. Barnhart, 362 F.3d 995, at 1000-01 (7th Cir. 2004). The ALJ determined that plaintiff has "the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she should never climb ladders, ropes, or scaffolds." The ALJ subsequently turned to step four, concluding that plaintiff was not capable of performing her past relevant work. However, at step five, where the burden shifts to the Commissioner, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."

Plaintiff takes issue with the ALJ's RFC analysis and subsequent finding at step five, arguing that the ALJ's decision is both legally erroneous and not supported by substantial evidence. According to plaintiff, the ALJ's decision should be reversed or remanded because it: (1) violates "20 C.F.R. § 404.1527 and SSR 96-2p by failing to accord appropriate weight to the opinion of the claimaint's treating physician"; (2) fails "to evaluate whether the Claimant's

3

impairment meets and/or equals the criteria of Listing 11.04"; and (3) ignores the ALJ's positive credibility determination in considering plaintiff's "ability to sustain work activities."

      **A.**      **Treating Physician's Opinion**

Plaintiff first argues that in finding that she retained "the residual functional capacity to perform sedentary work," the ALJ violated 20 C.F.R. § 404.1527 by not giving the appropriate weight to the opinion of plaintiff's treating physician, Dr. Jason Smith. On March 26, 2010, Dr. Smith, who had been treating plaintiff since at least June 10, 2009, filled out a Physical Residual Functional Capacity Questionnaire (the "report"). The report listed plaintiff's diagnoses as heart failure, myalgia and myositis, and motor neuron disease, and stated that her symptoms included neck, back, and shoulder pain, speech impediment, poor concentration, and balance problems. Dr. Smith noted that plaintiff had an adjustment disorder and that she was slowly recovering from her cardiovascular accident, but that her impairments could be expected to last at least twelve months.

Dr. Smith reported that plaintiff's pain and other symptoms frequently would interfere with her attention and concentration during a typical workday, and that she was incapable of performing even "low stress" jobs, because she had yet to regain executive control parameters, such as speech, concentration, emotions, etc. Dr. Smith concluded that plaintiff could walk only one to two city blocks before having to rest, sit for about 45 minutes, stand for about 15 minutes, and sit and stand/walk for a total of less than two hours a workday. The report indicated that it would be necessary for plaintiff to take constant unscheduled breaks during an eight-hour workday. In response to the question "how long (on average) will your patient have to rest before returning to work," Dr. Smith stated that plaintiff "may not return to work." Dr. Smith

4

stated that plaintiff's impairments cause her to have "good days" and "bad days," and reported that plaintiff was "not able to work" in response to a question concerning how many days a month she would likely be absent from work.

According to the ALJ, Dr. Smith's March 2010 opinion did not warrant special weight because: (1) it was not consistent with the remainder of the record; (2) opined on an issue exclusively reserved for the Commissioner; and (3) could have been the product of Dr. Smith's sympathy for plaintiff or pressure placed on the doctor by plaintiff.  As discussed above, this court will uphold the final decision of the Commissioner so long as her factual findings are supported by substantial evidence and no error of law occurred.  Schoenfeld, 237 F.3d at 792.  However, the ALJ's decision must reflect a logical bridge from the evidence to the conclusions sufficient to allow this court to assess the validity of the agency's ultimate findings and afford plaintiff meaningful judicial review.  See, e.g., Moore, 743 F.3d at 1121.  A decision that lacks adequate discussion of the issues will be remanded.  Id.  Here, the court concludes that in determining plaintiff's RFC, the ALJ erred in her treatment of Dr. Smith's opinion evidence.

As an initial matter, the ALJ's opinion does not explain how Dr. Smith's report is inconsistent with the greater medical record.  The ALJ provides no citation to support her statement that the report is inconsistent with "neurology reports and reports of other treating physicians," nor does she specify what about the Rehab Institute of Chicago ("RIC") progress notes or Dr. Smith's own progress notes are inconsistent with the report.  Without a greater level of specificity or analysis, it is impossible for this court to assess the validity of the ALJ's ultimate findings.

Moreover, the exhibits that the ALJ does point to, Exhibits 12F 56, 58, 60, 84, and 87, are RIC progress notes from the period immediately following plaintiff's stroke. The fact that plaintiff's health was improving as compared to her condition at the time of the stroke does not create an inconsistency with Dr. Smith's observations in the weeks and months after her stroke. In fact, the medical record refers to many of plaintiff's impairments as "late effect," meaning conditions that can develop days or even years after the initial cerebral vascular accident. Moreover, even the early RIC records the ALJ relied on indicate that plaintiff suffers from "[b]asic activity of daily living deficits" and "[i]nstrumental activity of daily living deficits." In addition, RIC progress notes from late July 2009 state that plaintiff is still suffering from "decreased verbal fluency" and "halting, effortful, aggramatic speech."

Nor is it clear to the court how Dr. Smith's own progress notes are inconsistent with his report. With the exception of one progress report in which the purpose of plaintiff's visit was a urinary tract infection, Dr. Smith's notes, beginning on June 10, 2009, through June 22, 2010, consistently report that plaintiff should remain home, has trouble speaking, and experiences muscle pain and headaches.

While the ALJ pointed to a lack of mental health issues identified in Dr. Smith's progress notes, plaintiff's request for SSI was not limited to an alleged mental health disability. And, as plaintiff notes, Dr. Smith's report was a physical, not mental, evaluation. Moreover, Dr. Smith is a medical physician, not a psychiatrist. Although Dr. Broroson's November 2010 report stated that plaintiff's headaches had been resolved, plaintiff testified at her hearing, which the ALJ found credible, that she continued to have headaches. In addition, just two months before her November 2010 visit with Dr. Broroson, plaintiff reported severe headaches, and Dr. Broroson

6

prescribed headache and sleep medicine. Finally, The ALJ's concern that Dr. Smith's opinion may have been influenced by sympathy or undue influence by plaintiff is wholly unsupported by the record.

### B. Listing 11.04A

Plaintiff also takes issue with the ALJ's analysis and conclusion at step three of the sequential process. Plaintiff argues that the ALJ erred by concluding that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment," because, according to plaintiff, "ample evidence exists in the record that supports a finding" of the criteria in Listing 11.04A. 20 C.F.R. Part 404 Subpart P Appx 1 § 11.04(A) requires that a claimant demonstrate "sensory or motor aphasia resulting in ineffective speech or communication" more than three months after the vascular accident. The ALJ, however, did not address Listing 11.04A in her opinion, but instead limited her step three analysis to Listings 12.02 and 12.04, which pertain to mental disorders. As discussed above, plaintiff's request for SSI was not limited to an alleged mental health disability, but also included impaired speech. Consequently, the court remands the case to the ALJ for consideration of 11.04A.[1]

---

[1] Because the court concludes that remand is necessary in light of the ALJ's errors concerning Dr. Smith's report and Listing 11.04A, the court need not address plaintiff's final argument concerning the ALJ's credibility determination.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and the decision denying SSI and SSDI benefits is remanded to the ALJ to conduct further analysis conforming with this opinion.

**ENTER:** **June 4, 2015**

_____
**Robert W. Gettleman
United States District Judge**